I want to remind you all about the timing. You have your time right there. And when it turns yellow, you have just a couple minutes. When it turns red, you are done unless we're still asking questions. You've got to answer our questions. You can't run away while we're still asking questions. But if we're not, then you need to be done at the red. So with that, let's go ahead and get started. The first case is case number 24-50189, Texas Public Policy Foundation v. U.S. Dept. of State. And we'll start with Andrew Davis for the Texas Public Policy Foundation. Good morning, Your Honors. May it please the Court. Andrew Davis for Appellant TPPPF. During President Biden's administration, the U.S. developed and published a climate pledge promising to cut net greenhouse gas emissions by half. This policy, if implemented, could have cost trillions of dollars and fundamentally alter the United States economy. The public accordingly deserves to know how this pledge was developed, including who developed it. Indeed, the who says volumes about the how, because in Washington, D.C., personnel is possible. Why is this? I mean, y'all have both said it's not moot. I'm a little bit struggling because President Trump has done something different. And so why do we still need to address this? Because we still seek the records. The fact is that the interest that FOIA protects is the ability to understand what the government is doing. Well, but you also, you immediately were talking in the past tense. So per Judge Haynes' question, may not be moot, but does that change our public interest calculus here? I mean, this is more of a history question now than it was, I don't know, six months ago. I disagree that it's a history question. The fact that President Trump has now said Could you also request who was involved in decisions for the Bay of Pigs or the Cuban Pick your policy decision from the 80s, 90s. Yes, FOIA still protects the ability to go after those documents to understand how the government made decisions. The fact that it's historical doesn't change that fact. Sorry, if there's a Democrat administration after in the next three years, we're going to go back in the Paris Agreement. This is all going to happen again. I mean, I'm just speculating, but it's not much speculation. Of course, that's going to happen. And so we would still want to know about it. That's exactly right, Judge Duncan. That was going to be my second point is it's President Biden reentered the Paris Agreement after President Trump had already pulled out of it in President Trump's first term on President Biden's first day. That's what he did. President Trump then removes the United States on his first day. I mean, if you want to put the shoe on the other foot and we were talking about the decision to engage in enhanced interrogation, assuming there's no, you know, there's no, there might be some state secret problems there, but let's just put that aside. If we were talking about the decision to engage in enhanced interrogation, send people to Guantanamo Bay, you know, remove illegal aliens, whatever, the other side of that issue would want to know who formulated the policies. Exactly. FOIA is meant to understand how the government acted for multiple reasons. And two of those are to hold individuals accountable and to be able to make informed advocacy to have different policies in the future. If another administration were to come in in four years or eight years, rejoin the Paris Agreement, TPPF would want to know how previous decisions were made so we can advocate on behalf of this interest. Is there a difference between the names and the emails, email addresses? In FOIA, having specific email addresses is very important for follow-up requests. You're not making the follow-up request to them. The follow, no, we would not be contacting them. I've not heard any suggestion of that. The Why do you need the email addresses of these individuals? Our experience, we've done a lot of FOIA-type issues asking the government for documents. When you have the specific email address, it makes it a lot easier to get responsive documents from the government. That said, if the government was willing to work with us by just giving the names and saying, these are the names of the people, they were on these documents, we want to know, for example, did they have contact with outside advocacy organizations on this issue during this time? That would suffice. The name is the critical part. The emails, in order to make targeted follow-up requests, they would just help us narrow the scope. So there is a difference between name and email address, I guess, in terms of the calculus? I don't think it would change too much in the calculus because the email address by itself would also say the name. But in terms of what would be most useful to us and I think the public, the name is the most important because that communicates who is making these decisions, or at least who is advising on these decisions. Well, thousands of people sending email to someone can be a real problem. So getting the emails out there can be a different issue from a name. Absolutely. We understand that this is, but these are public emails in the sense that they are used for official government business. But there's a perversity possible too, and that is you disclose the public email so everybody just goes to a Gmail account on the down-low and then they claim those are not public records at all. We've had that happen in the past, haven't we? And that is a fight that we had below that it's not an issue here, but just for a process. But it will be if all the public emails are disclosed, I would imagine. Do we care about that risk? We certainly care. Here, we don't have to worry about it too much because the fact that we are simply seeking the public addresses. But I think you're right that it should be a concern that it could push individuals to try to go outside of their official email addresses, to personal, to try to avoid these types of things. I wonder if this is the analysis that FOIA requires. And this is all very interesting about whether I have a personal interest in my official email address, which of course I don't because it's my official email address. But I thought FOIA presumptively requires disclosure unless it would constitute a clearly unwarranted invasion of personal privacy. I thought that was what we were here addressing. In other words, we think it's a good idea for there to be official email addresses out there. I mean, I have an official email address. And I assume when I send an email on my official government email address that I'm not sending it on my Gmail account. Correct. The analysis here is whether it is going to be substantially overweight. It's a very heavy burden for the government, especially in this context. I mean, if we were talking about their Gmail address or whatever other personal email addresses that people send to my wife and saying, could you pick up some overpriced eggs on the way home from work? Okay, sure. Maybe that's private. But my official email address? Hard for me to understand how that's a clearly unwarranted invasion of personal privacy. And that's consistent with what this Court has said in previous decisions. For example, in Pacific Molasses, this Court explained that the key is whether the information is sufficiently personal. That's the issue that has to be decided. In Wray, for example, in footnote 12, the Supreme Court explained that identifying information, which would include an official email address, is only having a personal stake for purposes of exemption six whenever it has some other identifying information that is personal. That's just not the case with an official email address, as it would be with the case of a home address, for example, or in some of this Court's other cases, a social security number or something else that actually runs to the person rather than the official email address. And why are these files, what are we talking about exactly in terms of the, I mean, it's probably not a physical document, but what are we talking about in terms of a file? What are these things we're talking about? So here, specifically, we have email chains that were sent among high-level officials discussing, asking essentially for advice on how to develop the Climate Pledge. So we have these email communications. That is what is considered a file. So the question at the threshold for this Court to decide— Well, why is that similar to a personnel or medical file? It is not. I just don't see that. I understand that the case law says we are to give a broad construction to the phrase similar file, but that doesn't seem similar at all to a personnel or medical file. In order to say that a policy document that simply has the name of an individual who worked on that document, purely official, is similar to a personnel file or medical file, is to stretch that term beyond all reasonable bounds. But if we agree with that, the other circuits have disagreed, or has that ship already sailed based on the case law? No, it has not sailed. There are, to be sure, some decisions that have gone the other way on this. Haven't most of them? The only circuit decisions that we know of, there are two that really address the issues, and they do go the other way. There are a number of district court decisions that we cite on— They say an email chain is a similar file to a personnel or medical file? They say that simply having a name associated with an official act can, in some circumstances, be a similar file. Wow. That's pretty deep textual analysis. And I think, looking back at some of the Supreme Court decisions on this, they have not been textually focused. And some of the decisions that have followed on that have also not been especially textually focused. There is going to be a broad control— I mean, if that's the analysis, that totally eliminates the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. That means that any time there is something personal in a document, in an email chain, whatever, then all of it immediately is a similar file. So it collapses the entire last clause of the statute. Yes, and that's essentially what some of the courts have done incorrectly in other cases, is that they essentially collapse it all and say, we just have to decide this clearly unwarranted decision. Forget about that similar files. But it's important. The text has two thresholds. Well, it's when the government—I understood FOIA to be, it's a sunlight provision that allows us to open up government decision-making. And if the government is making decisions through an email chain, an official email chain, here's what we should do, here's what we should do, then FOIA applies to that. I just don't understand calling that a—similar to someone's medical file, obviously. It's got all these medical details in it. But this, I just don't get it. Actually, the similar files is one reason that this case should just be resolved easily on that ground. These are not similar. Okay, I'm going to interrupt because they're asking you at a very high level. I'm at a somewhat lower level question that I want to ask, which is, you said we got that D.C. case, the human rights case, and that one made a lot of sense to me why they wanted the name, because it was somebody who—it was a police officer who had been convicted or had been dealt with on something wrong. And wanting to know police officers that are bad is something I can understand wanting to know. Here, it seems like what you really want to know is more the cubby, like, oh, these people are sitting over here. These people are sitting over here. That seems to be more what you want to know, rather than Jane Doe and John Doe, okay? And so it makes me wonder why there isn't some compromise you could have with the other side where they say, well, page 10, those were people from the XYZ agency who were, you know, one, two, three type people, okay? That's what you're looking for is not Jane Doe. Well, you don't know who Jane Doe is, so what difference does that make to you to know that name? If you just heard the name Katharina Haynes somewhere, you didn't know who that was, but if you heard the name, this was a United States Circuit judge, oh, okay, now that makes sense. So I'm just not understanding why y'all weren't able to address it that way. Who was the person in terms of their work as opposed to the name? Can you explain that? So a couple points, Your Honor. First, there are specific people that we know their title, but we still would like their name in order to understand who this actual person is, because we have a lot of people who are experts in policy. They follow these issues very closely. Names here can mean something. There may be some names that TPPF looks at and says, we don't know who that is. There very well may be names that they look at and say, that's someone who's been working on these issues, having this perspective for, you know, the last 10 years we've run across them. It's also especially possible that we look at this list of names of people who are consulted and say, huh, that's interesting. None of the people we would expect to have been consulted were consulted. The omission tells us something as well. If someone's name who would expect to be there is not. So knowing the names is important on these emails. I think it's incredibly important to put in context that these emails are not just low-level emails. The government wants to say that these are rank-and-file employees. We have no reason to dispute that they are career employees. But they're on emails asking about the climate pledge. Does FOIA make an exception for disclosing the name of rank-and-file employees? No, but this goes to the public interest here is so strong. Because these are emails asking about perspectives on draft climate policies. On the same email thread is John Kerry, who is the special envoy. These are emails that are coming from the staff secretary. They're coming from the White House. These are emails that are asking at the highest level for input on policy that is going to change the course of the economy. That is a high public interest. So whatever private interest, and we don't think there is any, in having your official email address or your name merely associated with helping develop this policy. Whatever that interest is, it certainly is not outweighing, especially not clearly outweighing, the public interest in having this information out for people to understand. Unless there is additional questions right now, I'll save the remainder of my time for Rulo. Okay. Thank you. We'll now hear from Jennifer Utrecht for the U.S. Department of State. Good morning, Your Honors. Jennifer Utrecht on behalf of the government. Your Honor, plaintiff's principal argument here, I think it's fair to characterize this as them having two arguments. Their principal argument here is that this court has no authority, the government has no authority, to ever withhold the names of employees on an email chain about policy. And I think this court needs to reject that argument out of hand. I mean, I, go ahead. We don't have to accept that argument. I mean, we still get into the, what the statute requires. Is there a, you know, clearly unwarranted invasion of privacy? And it seems to me that the government's argument is we don't ever have to disclose names and email addresses because, well, there would be one. So that is their second argument, Your Honor. I just wanted to make clear at the outset that the first argument would be inconsistent with the way that the Supreme Court and the Courts of Appeals have applied the threshold inquiry. Courts have recognized— Are these similar files? Yes. Are we precluded from doing the textual analysis ourselves? Because I don't see how these are similar files to medical and personnel records. So the Supreme Court in Washington Post very clearly explained that when you're doing the threshold analysis to determine what is a similar file, we're not supposed to be looking to whether there's highly intimate information of the type that is in medical or personnel files. Rather, the question really is, as this Court explained in Sherman and as Courts of Appeals have recognized in other cases, the question is, is there some information that relates to an individual that that individual has privacy interest in? And it's a very minimal threshold test. And if that threshold, that bare threshold test is met, the Court proceeds to the balancing. You have to recognize that that totally obliterates the text of the statute, the analysis that you just said. So I don't think so, Your Honor. I think the question, as this Court has explained in both Sherman and Pierce, it's similar—a file is similar to personnel and medical files for the purpose of Exemption 6 if, like personnel and medical files, it contains information that relates to an individual that the individual might want to get out. Okay. What case, either from our Court or the Supreme Court, says that an email chain that is doing official government business is a file similar to a medical or personnel file? So I'm not aware of any case that specifically addresses the question of email chains, Your Honor, but I would note that— So if there's no case, then it's an open question? It's not an open question, Your Honor, because this Court has said—so the email question, the specific facts are not present in these cases. But this Court has said that a file is a similar file if it contains information that relates to an individual. It said this in both Sherman and it also said it in Pierce in discussing the difference between the Privacy Act and FOIA. This Court said the real work— A lot of those cases, though, there might be an email address or a name that is also connected with other information about that person. You're saying, I think, that the very person's name, the fact that they work at the State Department and they have a name, is protectable because it relates to a person. No, Your Honor. Context obviously matters here, and plaintiffs have conceded that this is a controversial subject matter. And it's the association of that person's name with the controversial subject matter that creates the privacy interest in avoiding detrimental attention and harassment. That specific privacy interest is what we are here to discuss. I mean, is this like abortion? Is that your argument? Well, Your Honor, obviously, when we have moved to the balancing test, when we've gotten past the threshold inquiry, that's going to differ. We're going to examine the specific privacy interest and the specific public interest. And, of course, the facts matter, the subject matter matters. And, you know, I'm happy to discuss that, but I just want to make clear that the plaintiff's position here would mean, if this Court accepts their version of similar files, would mean that an email that, for example, had a private nongovernmental entity's name in it would not be a similar file. They don't explain why that would be a similar — would not be a similar file in something that has a government employee's name would be. So their textual argument falls apart when we're not looking at the specific circumstances here. And I think that just underscores that, really, this is a fight about the extent of the privacy interest and the extent of the public interest at the balancing test. And so you should reject out of hand this categorical argument that the government can never redact a government employee's name from an email. And on the balancing, Your Honor, I'd like to point out that plaintiffs have not done a great job of explaining exactly how knowing the names of these individuals will actually reveal much about what the government is doing. Here is it in the statute that the government gets to decide who's mid-level management or lower-level employees or high-level employees. That's nowhere. So it's — Is it? When we're making a private — when we're assessing the privacy interest at stake, and this is laid out in the Declaration of the Vought Index, the government looks to a number of different things. And one of the things that they've looked to here and where we drew the line was if a person has decision-making authority, there is obviously a heightened public interest in knowing their name. But where is that in the statute? They've got to have decision-making authority. So it's — that's a recognition of the balancing of interest. We have to assess whether the privacy interest outweighs — What about substantive input? So Your Honor, of course — You can't make a decision unless there's substantive input that comes from the various organizations in the agency. And if you're the decider, it doesn't really matter if we can assess your decision, but we can't assess the inputs that you got and from where they came. So I'd just like to note, Your Honor, that knowing these individuals' names — I mean, the context of this document, we don't know what their substantive input was. It is their names on a 2- and CC-line of a document. Doesn't that prove or prove the plaintiff's claim that it would be illuminating to know who these people are and that they were CC'd? Well, not necessarily, Your Honor, because — They're involved in the decision. You could imagine, for example — so an email involving a FOIA — or, sorry, a FOIA request involving, for example, documents related to an execution. And there is an email that says I have asked redacted name to prepare the room for the execution. Is it really telling much about what the government is doing that that — to know that person's name? That's — that's execution context. This is policy development, and it strikes me there are many hands on the policy that actually came out and was decided upon. What they want to know is which hands were involved and why. That's square up in FOIA. And I think, Your Honor, I think it would be helpful, then, to note exactly what plaintiffs already know. They want to — so they say they want to know who was involved in the policy decision. They — but they already know that the policy decision was something that was made by the National Climate Advisor in consultation with — FOIA doesn't say, well, when you — when you already know that's enough, you don't get any more. And you don't get it from these lower-level folks, as we define lower-level folks. So, Your Honor, it — it's a balancing test, and we have to assess — It's also a statute, and we're guided by what the text of the statute says. Correct, Your Honor. And the text of the statute says that the disclosure cannot happen if it would be a clearly unwarranted invasion of privacy, which — But the text says that the default rule is disclosure. Yes, Your Honor. And as — as this Court has recognized, it's a balance — to decide whether something is a clearly unwarranted invasion of privacy, you must balance the privacy interest at stake with the public interest. And we're not saying — you know, all we're here to say is that there is a very minimal, if any, public interest in knowing the names of people who did not actually have a final say, who may have been asked questions or may have been directed to implement policy, but they didn't actually have a final say in the policy itself. And plaintiffs have not demonstrated how they connect their actual public interest to knowing the names. And I think that's shown by what they do know. They know that this was developed in consultation with multiple different departments across the government, of which the State Department was one of them. They know which bureaus in the department provided recommendations because that was disclosed. They know the names of the decision-makers who have been — have been disclosed. What's left is names of people who were copied on these emails, but who did not have final decision-making authority. And I — you know, plaintiffs say that they have an interest because it would — I mean, those people work for the government. They work for the federal government, right? They may be a low-level employee. They may not have much input into the decision, but they work for the government. So how could it ever be a clearly unwarranted invasion of personal privacy that your name's out there? I mean, you work for the government. Why is that an invasion of personal privacy? As this court, and every other court, has recognized, government employees don't lose all privacy interests just by virtue of their employment. Just their name. Their name. I work for the government. How is that a clearly — I mean, it's — this is what I'm going to have to buy for dinner because my wife sent me a text. I get that. Or, man, my 14-year-old is really acting bad today. I get that. OK, that's a clearly unwarranted invasion of personal privacy. My 14-year-old never acts bad. I'd just like to note that for the record. However, those are invasions of privacy. It's just my name, though. I work for the government. It's not just your name, Your Honor, because in this — because it's a context-specific determination. How is it an invasion of privacy, though, that I work for the government? It's not because the disclosure is not just that you work for the government. It is that you were involved in a subject matter that is publicly controversial and that you will — although you did not have final decision-making authority, there is a very — Do you understand the perverse incentive there? The more important, the more controversial, the more subject to public debate some topic is, the more secrecy we have. No, Your Honor, that's — I understand why that is the sort of gut reaction you might have. It is often the case that the public interest and the privacy interest rise and fall together, that the stronger a person's privacy interest also tends to be in cases where there's a heightened public interest. I think in this case what matters is we are not disputing that there's a public interest in understanding what the government was doing and how the climate change was developed. It's that we don't — the names themselves don't give you that. They don't — as this court in Sherman put it, the public disclosure has to directly benefit the public's understanding. It's not a matter of hypothetically we could use these names to somehow maybe learn further information. It's that the disclosure would directly significantly contribute to the public's understanding of how the government operates. Of course it's not hypothetical, because when you — who's in the room? That's what Washington's all about. Who's sitting around the conference room table and involved in the discussion? That's what it's about. I've worked in state agencies, and knowing who is involved in whichever the decision is, is exactly illuminating as to how the decision is made. Your Honor, I think these sorts of considerations have also been at issue in cases like Civil Beat in the Ninth Circuit and Judicial Watch in the D.C. Circuit, all of which have recognized that, you know, there is a privacy interest in withholding your name if you are, you know, subject to detrimental attention or harassment, as the State Department said. That's what's so hypothetical to me. We're not talking about their home address. We're not talking about anything other than their publicly provided email address and their name. Is there a directory on the State Department website, a staff directory? I don't know the answer. I don't know the answer to that question. A lot of agencies have that. I mean, I could go look up who's at the Mississippi Secretary of State's office right now today and get their title. It's not the fact that they work for the government that gives them — that leads to the possibility of detrimental attention or harassment. It's knowing what they're doing for the government. It's knowing that they were copied on an email about a controversial subject matter. And that's — and that is what gives rise to the interest. I mean, I'd point out, Your Honor, that the plaintiff's argument that government personnel is policy would be an exception that swallows the rule. It would essentially mean that there's never a privacy interest in withholding a government employee's name. I mean, that's what the Second Circuit recognized in OPM v. Long, that we — there is — that government employees have a privacy interest in knowing their names and that you can't simply say — the fact that someone knows — works for the government is sufficient to require disclosure. And you know, there — it would be an exception that swallows the rule. I understand that there might be some minimal public interest in knowing who works for the government, but the fact of the matter is, when you're presented with a situation where, as plaintiffs admit that there is a controversial subject matter, that it's a topic that inflames passions, there is a heightened risk of harassment, of detrimental attention, and that's the privacy interest that we're protecting here. If there are no further questions, we would ask that this Court affirm. Thank you. All right. We'll have a rebuttal from Mr. Davis. Thank you, Your Honors. Just a couple very, very quick points. First, I just want to clarify that the Washington Post does not foreclose this Court. That case did not decide anything about e-mail addresses or specifically the case of names in this context. It leaves open the question, which is why — Do you recall what were the similar files in that case? I mean, I've got it here, but unfortunately, I don't have that highlighted. Yes. So it was citizenship information. There were some Iranian individuals, and people were requesting information to understand whether these individuals had Iranian citizenship. So it was individuals outside of the government, and they were trying to understand personal information, not intimate information, and that was the real dividing line in Washington Post was, is it just personal information, or does it have to be intimate information? The Court says it doesn't have to be intimate. That dividing line in Washington Post still stands here. This Court has no reason to discuss it. The fact is, in that case, citizenship information is personal, very personal, especially to a private person. So there's no foreclosure here. The Court — my friend in opposition also mentioned repeatedly, this is a balancing test. So even if you get past the similar files, this is a balancing test. This is a balancing test. But there's a very strong presumption, an exceedingly strong presumption in the case of Exemption 6, in favor of disclosure. This is not an example where you say, well, there's some privacy interests, there's some public interests, we go in favor on which one is more. No, this is when we start, the presumption is very high that we get this information, and they have to show — Well, there's been a balancing. Congress balanced it in the statute. That's exactly right. And Congress said, we presume that this should be disclosed. And one final point on that is that they had the chance, if they thought this was going to actually cause privacy harm in the sense of harassment, to put that into the record. They didn't do so. And that would be an independent reason to reverse here. Unless there are further questions, the fact is, these are not similar files. There's nothing similar between a personnel file and a public policy document that is simply asking for individuals who work for the government to opine on an important issue. Even if this were a similar file, it is not clearly an invasion of personal privacy. These are work emails on policy issues by individuals advising the government. I mean, we could presume the first question and answer the second, right? And in other words, if the privacy interests don't clearly outweigh the public interest in disclosure, we don't have to really delve too deeply into similar files, whether they are or not, correct? That is correct. There's no sort of jurisdictional issue here where one has to be decided against the other. However, we think it would be useful for instruction on FOIA cases to resolve the similar files issue. And then if this Court were so inclined to also say that even if that were wrong, that there's still not a clearly unwarranted invasion of privacy. So we still ask the Court to decide the similar files issue, but we do recognize there's no bar to deciding one or the other. Either one of them would dispose of this case. Okay. Are you done? Thank you. Yes, Your Honor. Okay. Thank you both. We appreciate y'all's argument. The case is now under submission.